UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

ARMANDO AGUILAR and BENITO CRUZ TORRES,
individually and on behalf of all
others similarly situated,

                    Plaintiffs,              **MEMORANDUM AND ORDER**

                                             15-CV-2781 (KAM)(SMG)

          -against-


HAM N EGGERY DELI INC. (d/b/a NEW YORK
DELI) and KOSTAS KALOUDIS,

                    Defendants.

--------------------------------------X

**MATSUMOTO, United States District Judge:**

          Plaintiffs Armando Aguilar ("Aguilar") and Benito Cruz

Torres ("Torres") brought suit against defendants Ham N Eggery

Deli, Inc. and Kostas Kaloudis, alleging violations of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the

New York Labor Law ("NYLL"), § 190 *et seq.*  The case proceeded

to trial and was submitted to a jury, which returned a verdict

partially in plaintiff's favor and partially in defendant's

favor and awarded plaintiffs damages under the NYLL.  Pending

before the court are defendants' renewed motion for judgment as

a matter of law and motion for a new trial, and plaintiff's

motion for liquidated damages, pre-judgment interest, and

attorneys' fees.  For the reasons set forth below, the court

denies defendants' motions and grants plaintiffs' motion.

**BACKGROUND**

On May 13, 2015, plaintiffs commenced this labor law action for unpaid minimum and overtime wages under the FLSA and NYLL, unpaid spread of hours pay and violation of wage notice and statement provisions under the NYLL, and recovery of equipment costs under the FLSA and NYLL against defendants. (ECF No. 1, Complaint ("Compl.").) On March 30, 2017, the court issued a Memorandum and Order granting in part and denying in part plaintiffs' motion for partial summary judgment. (ECF No. 47, Memorandum & Order dated March 30, 2017.) Specifically, the court: granted Aguilar summary judgment as to defendants' liability on his tip credit claim; granted Torres summary judgment as to defendants' liability on his tip credit claim insofar as it is based on the prerequisites in N.Y. Comp. Codes R. & Regs. tit. 12, §§ 1.3 and 2.2 and their predecessors; granted Aguilar summary judgment on his wage statement claims under N.Y. Lab. Law §§ 195(3) and 198(1-d) and awarded him $5,000 in damages; and denied Torres summary judgment on his wage statement claims. (*Id.*)

On October 12, 2018, the court issued a Memorandum and Order denying in its entirety defendants' motion for summary judgment. (ECF No. 64, Memorandum & Order dated October 12, 2018.) The court denied summary judgment on defendants' arguments that the deli was not covered by the FLSA and that

Torres's claims were barred by the statute of limitations, because there were disputed issues of material facts related to those determinations. (*Id.*) Based on the denial of summary judgment on the FLSA coverage issue, the court held that defendant's argument that the court should decline to exercise supplemental jurisdiction over plaintiffs' NYLL claims was moot. (*Id.*)

A trial commenced on November 13, 2018, and a jury heard evidence on November 13 and 14, 2018. After hearing summations and being charged, the jury deliberated and returned a verdict on November 15, 2018. (ECF No. 97, Returned Verdict Form.) The jury only returned verdicts in plaintiffs' favor on the minimum wage and overtime claims under the NYLL, finding for the defendants on the sole FLSA claim and the other remaining NYLL claims. (*Id.*) Defendants subsequently filed a renewed motion for judgment as a matter of law or for a new trial, and plaintiffs moved for liquidated damages, pre-judgment interest, and attorneys' fees.

**LEGAL STANDARD**

**I. Motion for Judgment as a Matter of Law under Rule 50 or for a New Trial under Rule 59**

"If a party believes that 'a reasonable jury would not have a legally sufficient evidentiary basis' to find for its adversary on a particular issue, it may move for judgment as a matter of law during trial under Federal Rule of Civil Procedure

3

50(a) and renew the motion after trial under Rule 50(b)."
*Cangemi v. Town of E. Hampton*, 374 F. Supp. 3d 227, 232
(E.D.N.Y. 2019) (citing Fed. R. Civ. P. 50 (a)-(b)). "In ruling
on the renewed motion, the court may: (1) allow judgment on the
verdict, if the jury returned a verdict; (2) order a new trial;
or (3) direct the entry of judgment as a matter of law." Fed.
R. Civ. P. 50(b).

"When evaluating a motion under Rule 50, courts are
required to consider the evidence in the light most favorable to
the party against whom the motion was made and to give that
party the benefit of all reasonable inferences that the jury
might have drawn in [its] favor from the evidence." *ING Glob.
v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d
Cir. 2014) (citation and internal quotation marks omitted).
"The court cannot assess the weight of conflicting evidence,
pass on the credibility of the witnesses, or substitute its
judgment for that of the jury, and must disregard all evidence
favorable to the moving party that the jury is not required to
believe." *Id.* (citation and internal quotation marks omitted).
"Put another way, a court may grant a Rule 50 motion only if,
after 'viewing the evidence in the light most favorable to the
non-movant, [it] concludes that a reasonable juror would have
been compelled to accept the view of the moving party.'"

4

*Jackson v. Tellado*, 295 F. Supp. 3d 164, 170 (E.D.N.Y. 2018)

(citing *Cash v. Cty. Of Erie*, 654 F.3d 324, 333 (2d Cir. 2011)).

A party "fil[ing] a renewed motion for judgment as a matter of law . . . may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). "The court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a). "In contrast to a Rule 50 motion for a new trial, a Rule 59(a) motion for a new trial "may be granted even if there is substantial evidence supporting the jury's verdict.'" *Greenaway v. Cty. of Nassau*, 327 F. Supp. 3d 552, 560 (E.D.N.Y. 2018) (citing *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998)). "Moreover, a trial [court] is free to weigh the evidence [itself], and need not view it in the light most favorable to the verdict winner." *DLC Mgmt. Corp.*, 163 F.3d at 134.

But "[a] trial court should not grant a motion for a new trial unless it is 'convinced that the jury ... reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *Ali v. Kipp*, 891 F.3d 59, 64 (2d Cir. 2018) (citing *Amato v. City of Saratoga Springs*, N.Y., 170 F.3d 311, 314 (2d Cir. 1999)). "A court considering a Rule 59 motion . . . should only grant such a motion when the jury's verdict is

5

egregious . . . and should rarely disturb a jury's evaluation of a witness's credibility." *DLC Mgmt. Corp.*, 163 F.3d at 134 (citations and internal quotation marks omitted).

## DISCUSSION

### I. Exercise of Supplemental Jurisdiction

Defendants argue that the jury's verdict should be set aside because the plaintiffs' FLSA claims prior to 2015 were withdrawn before the jury deliberated and, therefore, the court was divested of its supplemental jurisdiction over plaintiffs' state law claims from 2009 to 2014. (ECF No. 102-1, Defendants' Memorandum of Law in Support of Post-Verdict Motions Pursuant to Fed. R. Civ. P. 50 & 59 ("Def. Mem.") at 2, 6.) Plaintiffs respond that none of the factors which would allow the court to decline exercising supplemental jurisdiction are present in this case and that it would have been appropriate for the court to exercise jurisdiction even if one of those factors were present. (ECF No. ECF No. 101, Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Set Aside the Verdict of Grant Defendants a New Trial ("Pl. Opp.") at 4-7.) Defendants argue in reply that the court should not have exercised supplemental jurisdiction because state law issues predominated over the case. (ECF No. 102-2, Defendants' Reply Memorandum of Law in Support of Post-Verdict Motions Pursuant to Fed. R. Civ. P. 50 & 59 ("Def. Reply") at 2-3.)

"Under 28 U.S.C. § 1367(a), federal courts have supplemental jurisdiction to hear state law claims that are so related to federal question claims brought in the same action as to 'form part of the same case or controversy under Article III of the United States Constitution.'" *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004). State and federal claims form part of the same case or controversy if they "derive from a nucleus of operative fact." *Id.* (citing *Cicio v. Does*, 321 F.3d 83, 97 (2d Cir. 2003)). "It is well settled that NYLL and FLSA claims that arise out of the same compensation policies and practices derive from the same common nucleus of operative fact." *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 551 (S.D.N.Y. 2017).

If the requirement for supplemental jurisdiction under Section 1367(a) is met, "the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c)." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998). Under subsection 1367(c), district courts may decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  If one of the § 1367(c) factors applies, the court still "should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity."  *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)).

Regarding plaintiffs' FLSA claims, there was only one tax return in evidence, for the year 2015, which showed gross receipts over $500,000, the amount necessary for the FLSA to apply.  (*See* Tr. 156.)  When the defense sought directed verdict under Rule 50, the issue of whether the New York Deli generated as least $500,000 in revenue was discussed.  (Tr. 233.)  After the parties discussed the lack of documentation available for most of the years in question, and after the court noted that the jury would have to resolve this issue, plaintiff offered to withdraw the FLSA claims, except for Aguilar's 2015 FLSA claim, in order to free the jury from having to decide the issue.  (Tr. 233-35.)  Plaintiffs' counsel sought confirmation that the court would continue to exercise supplemental jurisdiction over the remaining state law claims for both plaintiffs, which the court agreed to do.  (Tr. 235-36.)  Defense counsel did not raise any objections to the court's continued exercise of supplemental

jurisdiction.  (*See id.*)  Defense counsel also did not raise any objections during the charging conference when plaintiffs' counsel confirmed that plaintiffs would drop all of the FLSA claims except for Aguilar's 2015 claim.  (Tr. 254-55.)

Section 1367(c)(1) does not apply because there are no novel or complex issues of New York state law at issue here. Regarding Subsection 1367(c)(2), the state law minimum wage and overtime claims did not predominate over the federal law claims. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 246 (2d Cir. 2011) ("Because the FLSA and the NYLL use a similar standard for making [minimum wage or overtime violation] determination[s], and because each set of claims arise from the same set of operative facts, a determination as to the FLSA claims may decide the Plaintiffs' NYLL claim as well."). Section 1367(c)(3) does not apply because the court did not "dismiss[] *all* claims over which it has original jurisdiction," retaining Aguilar's 2015 FLSA claim.  (28 U.S.C. § 1367(c)(3) (emphasis added)).  Finally, Section 1367(c)(4) does not apply because there are no exceptional circumstances at issue in this case.

But even if the 2015 FLSA claim had been dismissed as well, the Second Circuit has "upheld the exercise of supplemental jurisdiction even when all federal-law claims were eliminated prior to trial, for example, in long-pending cases

presenting no novel issues of state law where discovery had been completed, dispositive motions had been submitted, and the case would soon be ready for trial." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) (citation and internal quotation marks omitted). *See also Purgess v. Sharrock*, 33 F.3d 134, 139 (2d Cir. 1994) ("When the district court determined, at the end of the defendants' case, to dismiss plaintiff's last federal claim, there were no compelling reasons at that point to prevent a final determination of the state claims by the jury. . . . The district court did not abuse its discretion by exercising supplemental jurisdiction.").

Moreover, even accepting for the sake of argument that the state law claims predominated after the parties stipulated to withdraw the majority of the FLSA claims, defendant does not adequately establish that judicial economy, convenience, fairness, and comity would be served by declining to exercise supplemental jurisdiction. "[E]ven when federal claims are resolved before trial, comity does not automatically mandate dismissal of pendent state claims." *Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 545 (2d Cir. 1989). Here, a federal claim remained at issue during part of the trial. Judicial economy would not be served by having the NYLL claims retried in state court with the same evidence presented in federal court. It would have been unfair for the plaintiffs' case to be dropped

during trial, and it would be unfair now for the plaintiffs to try a duplicative case arising from the same facts in state court.  It also would be imprudent for the court to entertain and grant the defendants' current objection after defense counsel failed to object when plaintiff's counsel specifically confirmed that the court would exercise supplemental jurisdiction over the state law claims.

The court's exercise of supplemental jurisdiction over the state law claims was proper, and the court will not set aside the jury's verdict on this basis.

## II.  Evidentiary Support for Jury Award

### A. Armando Aguilar

Defendants argue that the jury's verdict should be overturned and its damages award set aside because there was overwhelming evidence that Aguilar was properly paid in accordance with minimum wage and overtime provisions.  (ECF No. 102-1, Def. Mem. at 3.)  Defendants specifically claim that Aguilar's pay reflected the rates that were listed on a sign provided by the New York Department of Labor, which was posted on the wall of the business and reflected the minimum wage changes over time.  (*Id.* at 3-4.)  The defendants also identify testimony from Aguilar and another witness, Willy Quinones, asserting that plaintiffs were aware of the sign.  (*Id.* at 3-4.)

Plaintiffs argue that defendants failed to articulate how or why the damages award was unsupported by the evidence and counter defendants' arguments by contending that defendants' application of the tip credit entitled Aguilar to some amount of damages. (ECF No. 101, Pl. Opp. at 8.) In support of their damages awards, plaintiffs point to Aguilar's testimony that he frequently worked more than 40 hours a week and was paid a fixed salary, which resulted in damages (an award reflecting that the jury only partially credited Aguilar). (*Id.* at 8-9.)

In reply, defendants again identify the signs identifying the lawful pay rates as evidence supporting their position. (ECF No. 102-2 at 3.) Defendants also argue that defendant Kaloudis's testimony regarding his process of calculating and making payments to Aguilar supports overturning the verdict, in addition to drawing attention to offered evidence that Aguilar spent part of his time doing "delivery (*i.e.* tip credit) work." (*Id.* at 4-5.)

Considering the evidence in the light most favorable to Aguilar, a reasonable jury would not have been compelled to find in defendants' favor. Even weighing the evidence under Rule 59, the court does not find that the jury reached an egregious or seriously erroneous result. As described in greater detail below, Aguilar offered testimony that he regularly worked over 40 hours a week and was paid a fixed

weekly salary that did not sufficiently cover the minimum wage and overtime pay.  The jury credited Aguilar's testimony over that of defendant Kaloudis and witness Willy Quinones.  The presence of a sign reflecting the law is not evidence that Aguilar was paid in accordance with that law.

Aguilar testified that he started working at the deli as a dishwasher, cleaner, and delivery person.  (Tr. 31-32.)  He testified that he worked from 7 a.m. to 6:30 p.m. on weekdays and from 6 a.m. to 2 p.m. on Saturdays.  (Tr. 31.)  Aguilar would make 5-7 deliveries, in contrast to other people who made a lot more deliveries.  (Tr. 37, 84.)  In July 2011, his schedule changed to working from 5 a.m. to 4 p.m. on weekdays, and from 5 a.m. to 1 p.m. on Saturdays.  (Tr. 33.)  He also became a food preparer in July 2011.  (Tr. 33.)  In July 2013, his weekday schedule changed to working form 5 a.m. to 3 p.m. (Tr. 34.)

Aguilar testified that he was paid $250 per week when he started working for the defendants in 2008, and received a raise to $400 per week in July 2011, when he became a food preparer.  (Tr. 34-35.)  He testified that he was sometimes given around $1 to $1.50 per delivery (or $10 in total) in tips when he made deliveries.  (Tr. 85.)  His pay increased again to $460 per week in April 2013.  (Tr. 36.)  Aguilar testified that Kaloudis never sat down with him and showed him how his pay was

being calculated, and he also testified that he was told by Kaloudis that he would be paid at a weekly rate. (Tr. 36-37, 87.)

Kaloudis testified that the deli's hours of operations were from 5 a.m. to 4 p.m. Monday through Friday, and 6 a.m. to 1 p.m. on Saturdays. (Tr. 94.) He testified that the employees had a steady schedule and set hours. (Tr. 95.) Kaloudis testified that the schedule was never written because there were set hours and the schedule never fluctuated. (Tr. 97.) But he also stated that the schedules, including Mr. Aguilar's, varied seasonally—during the summer and around Christmas. (Tr. 97-98.) Kaloudis admitted that he did not understand that there was a legal requirement to keep records of the hours worked and noted that the laws changed constantly between 2008 and 2015. (Tr. 104.) Kaloudis stated that he did not keep records of when people clocked in or out of work, but kept index cards that reflected the hours an employee worked that week. (Tr. 105.)

Defendants offered an exhibit, Def. Ex. 5, which consisted of index cards Kaloudis said he used to record Aguilar's pay from November 2012 through March 29, 2015. (Tr. 167.) He claimed that his prior records were lost in Hurricane Sandy. (Tr. 167.) Kaloudis described his payment calculation as multiplying the minimum wage by the hours worked in the week, adding overtime, and deducting tip credit. (Tr. 166.) The

14

cards reflected consistent application of tip credit, which was always $2.25 per hour and deducted from the minimum wage. (Tr. 170, 174.) Kaloudis testified that Aguilar worked 25 hours per week doing delivery work. (Tr. 170-72.) Defendants deducted a tip credit of $56.25 from Aguilar's weekly pay. (Tr. 46; Def. Ex. 5 at 1, 4.)

Kaloudis further testified that he believed Aguilar was paid around $250 or $270 per week when Aguilar first started working and claimed that Aguilar's pay changed every time the minimum wage increased. (Tr. 109, 195-96.) Kaloudis also testified that he thought Aguilar generally received between $40-$50 in tips each day. (Tr. 197.) Kaloudis said Aguilar would ask him to exchange the $1 bills received as tips for larger bills. (*Id.*) Aguilar denied that he made $40-$50 a day in tips (Tr. 84) and claimed that he would bring his tip money to Kaloudis only when he needed change for a dollar. (Tr. 85-86.)

Kaloudis testified that he did not give employees, like Aguilar, who were paid in cash pay statements; he would give them the receipt from the calculator he used to calculate their pay with them each week. (Tr. 100.) Kaloudis said that he calculated the payments in the presence of and with any necessary input from the employee. (Tr. 100, 106-08.) He testified that workers knew what the minimum wage was because of

posters he had on the business's wall.  (Tr. 161.)  He posted these posters from the restaurant's opening and changed them whenever a new one was issued.  (Tr. 161-62.)

Willy Quinones, an employee of the deli from 2014 through 2016, testified that he saw Aguilar speaking with Kaloudis with index cards and calculators when Aguilar was getting paid.  (Tr. 244.)  He also testified that he did not hear any of their conversations or see any of the calculations being made.  (Tr. 247-48.)

Viewing the evidence in the light most favorable to the plaintiff, the court finds that the jury would not have been compelled to rule in favor of the defendants.  Nor can the court conclude that the jury's verdict was seriously erroneous or a miscarriage of justice.  The jury's finding of minimum wage violations is consistent with the testimony offered by both Aguilar and Kaloudis that Aguilar was paid $250 per week when he first started working at the deli, as well as defendant's testimony that he consistently deducted a tip credit from Kaloudis's minimum wage.

Defendants also argue that Def. Ex. 5 demonstrates that Aguilar was paid in accordance with the minimum wage and overtime.  (ECF No. 102-1, Mem. at 4; ECF No. 102-2, Reply at 4-5.)  However, the jury was at liberty to determine whether they credited this record as comprehensive and accurate regarding how

much Aguilar worked or was paid. Kaloudis himself testified that he did not keep track of the actual times people started and finished working, claiming that the schedules were set. Aguilar also testified that there was not a system for clocking the employees' time. And Kaloudis further testified that he came into work after the business opened, varying the time he arrived "to keep everybody on edge." (Tr. 94-95.) This meant he did not personally observe or have firsthand knowledge of how much Aguilar actually worked each week. The jury weighed both parties' testimony and credited what they believed.

Defendants also argue that they properly paid Aguilar at the tip credit rate and that the record supports this. (ECF No. 102-2, Reply at 4-5.) This court already determined that defendants were not entitled to deduct a tip credit from the wages paid to Aguilar during the first round of summary judgment briefing. (ECF No. 47, Memorandum & Order dated March 30, 2017 at 8-9.) The jury was properly instructed that the defendants were not entitled to take a tip credit. Even considering defendants' trial testimony and post-trial arguments, defendants still would not prevail on the tip credit issue. They did not offer evidence establishing that defendants complied with the written notice requirements to claim tip credit under the NYLL or that Aguilar was classified as an employee against whom a tip

credit could be applied, the bases on which the court ruled in Aguilar's favor on summary judgment.

Based on the foregoing, the court will not set aside the jury's verdict as to Aguilar, and defendants' motions are denied.

### B. Benito Cruz Torres

Defendants argue that the jury's verdict and award of damages to Torres should be set aside because Torres was aware of the lawful wage rates and provided vague testimony. (Def. Mem. at 5-6; Def. Reply at 6-7.) Defendants assert that Torres was paid in cash at his request and that Kaloudis maintained payment records for Torres which were destroyed in Hurricane Sandy. (Def. Mem. at 5; Def. Reply at 6-7.) Plaintiffs argue that defendants do not identify how or why the damages award to Torres was unsupported by the evidence and that Torres also was entitled to damages based on defendants' application of tip credit to his wages.

Kaloudis testified that he thought that Torres worked from 7 a.m. to 4 p.m. on Monday through Friday, though he also began working on Saturdays from 6 a.m. to 1 p.m., four or five months after he started. (Tr. 110.) Kaloudis testified that Torres was paid $250. (Tr. 111.) The payment records regarding Torres were lost in Hurricane Sandy. (Tr. 182.) Kaloudis testified that he fired Torres because he saw him with bananas

that he had taken without permission from the restaurant.  (Tr. 164.)

Torres testified that he worked at the New York deli from 2008 to 2012.  (Tr. 214-15.)  He said that he remembers he stopped working for the defendants in 2012, because he remembered that he worked with his coworkers for 4 years.  (Tr. 225-26.)  He said he worked from 7 a.m. to 5 p.m. Monday through Friday, and from 6:00 a.m. to 1:00 p.m. on Saturday, washing dishes and making deliveries.  (Tr. 215.)  He testified that there was no time recording system for tracking their hours.  (Tr. 216.)  Torres testified that his initial pay was $175 per week, which increased to $225 a week a year into his employment, and that he made $250 per week during his last year working there when he began cleaning and stocking merchandise.  (Tr. 216.)  Torres said that he wasn't aware of the minimum wage rate (Tr. 219), but later conceded that he saw the poster listing the minimum wage as $7.25.  (Tr. 223.)

The jury considered the conflicting testimony and credited Torres's claim that he was not paid properly during his time working for the defendants.  This case does not present a rare circumstance in which the court should undermine the jury's assessment of a witness's credibility.  In any case, the jury did not fully credit Torres, ultimately agreeing with the defense's position that Torres was terminated in 2010, rather

than in 2012 as plaintiffs contended.  Viewing the evidence in the light most favorable to the plaintiff, the court finds that the jury would not have been compelled to rule in favor of the defendants.  The court also cannot conclude that the jury's verdict is seriously erroneous or constitutes a miscarriage of justice.

The court will not aside the jury's verdict as to Torres, and defendants' motions are denied.

## III.  Award of Additional Damages and Fees to Plaintiffs

### A. Minimum Wages and Overtime

Plaintiffs seek liquidated damages and prejudgment interest based on the jury's award of compensatory minimum wage and overtime damages.  Before calculating liquidated damages and prejudgment interest, the court has determined that some adjustments are warranted as a matter of law to determine the proper compensatory damages.  The start date for the damages period is May 13, 2009 because the plaintiffs may only recover six years prior to filing of the action.  N.Y. Lab. Law § 663.

#### 1. Aguilar

To determine the minimum wage to which Aguilar was entitled, the jury used two methods to calculate damages.[1]

---

[1] Although the verdict form did not include the jury's specific calculations, the court determined their calculations by applying the jury instructions and confirming which salary amounts yielded the awarded damages.  The court continues to accept the jury's factual findings, as explained above, with

First, the jury credited Aguilar's testimony regarding his weekly salary and awarded him the difference between what the labor law required and what he was paid.  After Aguilar's salary was increased in July 2011, the jury used a second method of calculating damages and credited Kaloudis's testimony that he deducted tip credit from Aguilar's pay.  The jury awarded Aguilar damages equal to the amount of tip credit that Kaloudis wrongfully deducted, likely relying on the instruction that the court had already determined that the law did not authorize defendants to deduct a tip credit.

For Aguilar's 2009 damages, the jury awarded 23 weeks of pay for the two applicable minimum wage rates that year. However, Aguilar can only recover for damages six years prior to the filing of this action, or as far back as May 13, 2009.  The minimum hourly wage changed from $7.15 to $7.25 on July 24, 2009.  The jury, therefore, was limited to providing 10 weeks of damages at the $7.15 hourly minimum wage, covering the period from May 13 to July 24, 2009, rather than the 23 weeks they used.

Beginning in July 2011, when the jury began awarding tip credit, the jury recognized that Aguilar's weekly pay was greater than the minimum wage required by law.  Whatever

---

alterations to damages made only where the calculations failed to comply with the law.

defendants' intent regarding the tip credit, Aguilar's weekly salary from July 2011 through April 2015 exceeded the minimum wage based on a forty-hour work week, and Aguilar, therefore, cannot recover an additional minimum wage award for this time period.

The court adjusts Aguilar's overall minimum wage awards as follows:

| Year | Lawful Weekly Wage | Weekly Wage Received | Weekly Shortfall | Weeks Underpaid | Original Jury Award | Corrected Award |
|------|------|------|------|------|------|------|
| 2009 | $286 | $250 | $36 | 10 | $1748 | $360 |
| 2009[2] | $290 | $250 | $40 | 23 | | $920 |
| 2010 | $290 | $250 | $40 | 52 | $2080 | $2080 |
| 2011 | $290 | $250 | $40 | 26 | $2503 | $1040 |
| Total | | | | | $15,950[3] | $4400 |

The jury also awarded Aguilar overtime damages for the years 2009, 2010, and 2011 for 15 hours of overtime per week. Again, the jury awarded overtime pay for the year 2009 beyond the statute of limitations. The court reduces Aguilar's

---

[2] Damages for the year 2009 are apportioned to reflect the two different minimum wage rate periods applicable that year: 10 weeks at $7.15 and 23 weeks at $7.25.
[3] The jury also awarded damages from July 2011 through April 2015 (see ECF No. 97, Returned Verdict Form at 3-4), which are reflected in this total.

overtime award to reflect that Aguilar cannot recover for
overtime prior to May 13, 2009:

| Year | Overtime Rate | Hours of Overtime Worked | Weeks Underpaid | Original Jury Award | Corrected Award |
|-------|---------------|--------------------------|-----------------|---------------------|-----------------|
| **2009** | $10.725 | 15 | 10 | $7452 | $1608.75 |
| **2009** | $10.875 | 15 | 23 | | $3751.88 |
| **2010** | $10.875 | 15 | 52 | $8483 | $8482.5 |
| **2011** | $10.875 | 15 | 26 | $4242 | $4241.25 |
| **Total** | | | | $20177 | $18084.38 |

2. <u>Torres</u>

Regarding Torres, the jury also awarded damages that
did not reflect the May 13, 2009 limitations period for damages
in the year 2009.  For Torres's minimum wage damages, the jury
credited Torres's testimony that his salary was $175 per week
and then $225 per week, before increasing to $250 per week
during his last year of employment.  Although the court alters
the award to reflect the statute of limitations, the court does
not otherwise alter the jury's findings.  Torres's minimum wage
awards, as adjusted for the statute of limitations, are as
follows:

| Year | Lawful Weekly Wage | Weekly Wage Received | Weekly Shortfall | Weeks Underpaid | Original Jury Award | Corrected Award |
|---|---|---|---|---|---|---|
| **2009**[4] | $286 | $175 | $111 | 7 | $4576 | $777 |
| **2009** | $286 | $225 | $61 | 3 | | $183 |
| **2009** | $290 | $225 | $65 | 23 | | $1495 |
| **2010** | $290 | $250 | $40 | 52 | $2080 | $2080 |
| **Total** | | | | | $6656 | $4535 |

Similarly, the jury awarded Torres overtime damages for the year 2009 that did not reflect the May 13, 2009 limitations period. Torres's overtime awards as adjusted are as follows:

| Year | Overtime Rate | Hours of Overtime Worked | Weeks Underpaid | Original Jury Award | Corrected Award |
|---|---|---|---|---|---|
| **2009** | $10.725 | 15 | 10 | $8424 | $1608.75 |
| **2009** | $10.875 | 15 | 23 | | $3751.88 |
| **2010** | $10.875 | 15 | 52 | $8483 | $8482.5 |
| **Total** | | | | $16907 | $13843.63 |

---

[4] The year 2009 is split into three sections to reflect the two minimum wage rate periods applicable in 2009, the statute of limitations, and the jury's crediting of Torres's testimony that he was initially paid $175 and then $225. The jury's initial damages award reflected a finding that Torres was paid at each of these rates for half of the year (26 weeks).

Having made the foregoing adjustments, the court now turns to the plaintiffs' requests for liquidated damages and prejudgment interest.

B. Liquidated Damages

Plaintiffs argue that they are entitled to liquidated damages pursuant to New York Labor Law § 198, based on the jury's findings that defendants acted willfully prior to November 24, 2009, and did not act in good faith after November 24, 2009. (ECF No. 99, Plaintiffs' Post-Trial Memorandum of Law ("Pl. Mem.") at 2.) Plaintiffs note that the jury could have made their willfulness and good faith determinations based on the magnitude of underpayments plaintiffs experienced, as well as the defendants' awareness of and ongoing failures to demonstrate their attempts to comply with the NYLL. (Pl. opp. at 9-10.)

Defendants argue that no liquidated damages should be awarded because the jury's findings on willfulness and good faith were not supported by the weight of the evidence. (ECF No. 100, Defendants' Memorandum of Law in Opposition to Plaintiffs' Post-Verdict Memorandum of Law re Liquidated Damages and Prejudgment Interest ("Def. Opp.") at 1.) Defendants also argue that the jury's completed verdict form is vague as to when the jury's findings applied. (*Id.* at 2.) Defendants argue generally that the plaintiffs were properly paid, which is

reflected in the records presented during the trial or lost during Hurricane Sandy, and that plaintiffs knew they were getting paid properly based on the signs in the business and Kaloudis's review of their payments with them each week. (Def. Mem. at 6-7; Def. Reply at 7-8.) Defendants assert that to the extent there were any violations of the labor law, any underpayments were "completely inadvertent, and not 'willful' or made subjectively in bad faith." (Def. Opp. at 2.)

"[W]illfulness . . . involves either knowledge by the employer that his conduct is illegal or reckless disregard for whether it is statutorily prohibited." *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 261 (S.D.N.Y. 2008). "No finding of malice or bad faith, however, is necessary." *Ayres v. 127 Rest. Corp.*, 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998). But "[m]ere negligence is insufficient . . . and the burden is on the employee to show willfulness." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009). "[I]f an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014). "The applicable test for willfulness [under New York Labor Law] appears to parallel that employed in determining willfulness for limitations purposes under the FLSA." *Yu G. Ke*, 595 F. Supp. 2d at 261. "Where a jury has returned a finding

of willful violations of the FLSA, courts typically do not exercise their discretion to reduce an award of liquidated damages under the FLSA." *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013).

"In 2009, the NYLL was amended to mandate an award of liquidated damages 'unless the employer could prove its good faith,' mirroring the FLSA's liquidated damages provision." *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 411–12 (E.D.N.Y. 2017) (citing *Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x. 59, 60 (2d Cir. 2016)). "To establish the requisite subjective good faith, an employer must show that it took active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (citation and internal quotation marks omitted).

The jury credited the plaintiffs' testimony regarding what they were paid and determined that the defendants failed to pay the plaintiffs the minimum wage for a full work week for at least some of the time during which the defendants employed the plaintiffs. Plaintiffs elicited testimony from Kaloudis that he had primary responsibility for determining employee pay. (Tr. 103-04.) When asked whether he understood one of the legal requirements he was bound by, Kaloudis testified that he did not and that "through 2008 to 2015 the laws constantly changed."

(Tr. 104.)  Defendants, however, have also claimed that the
business had a poster listing the correct minimum wage amount to
which employees were entitled and other labor law requirements.
(Tr. 222-23; Def. Reply at 6-7.)  Whether considering Kaloudis's
awareness of the "constantly chang[ing]" labor laws or his
understanding of the minimum wage from the posters in his
business, the jury had a sufficient basis to determine that the
defendants were aware of or acted with reckless disregard for
whether their conduct violated New York Labor Law, and that the
defendants failed to ascertain and/or comply with the same.  *See
Vasquez v. Ranieri Cheese Corp.*, No. 07-CV-464, 2010 WL 1223606,
at *18 (E.D.N.Y. Mar. 26, 2010) ("The thrust of the defense,
inferentially, is that [the employer] somehow had a good faith
reason not to read and implement the laws his poster-hanging
noticed.").

Moreover, the jury determined that the defendants
acted in subjective good faith beginning in July 2011,
acknowledging that the defendants paid Aguilar a higher salary
that sufficiently covered the minimum wage.  Although the jury
credited the defendants as acting in good faith, starting in
July 2011 when Aguilar's total salary increased, the jury
nonetheless determined defendants remained liable because the
defendants improperly reduced the plaintiffs' wages by deducting
a tip credit, without properly complying with the tip credit

28

law's prerequisites or even determining whether plaintiffs were employees to whom a tip credit could be applied. In essence, the jury appears to have found that defendants attempted to comply with the minimum wage law, even though they improperly considered tip credit as compensation.

Defendants argue that the liquidated damages calculations are faulty because the jury's verdict does not specify the time period, and contest plaintiff's "propos[al] to presume that the jury found that violations prior to November 24, 2009 were willful" based on the jury instructions. (Def. Opp. at 2.) Defendants also argue that there is "a vagueness and ambiguity" in a handwritten note on the verdict sheet stating "[e]verything before July 2011 [was] not in good faith," and that the jury has not sufficiently identified the time period applicable for this finding.

The court respectfully disagrees with both of these defense arguments. The jury instructions explained the relevant time periods to which the jury's findings would apply: "violations that occurred before November 24, 2009" for willfulness and "on or after November 24, 2009" for good faith. (ECF No. 78, Court Ex. 3 – Jury Instructions at 40-41.) Additionally, the handwritten note on the verdict form clarifies that the good faith determination by the jury applied from the start of the period, November 24, 2009, to July 2011, which is

when Aguilar received an increased salary. Although the court
believes the jury instructions on willfulness are adequate to
determine the relevant time period for the willfulness finding,
the jury's handwritten clarification regarding good faith
inferentially supports the conclusion that the jury found all of
defendants' violations prior to November 24, 2009 to be willful.
The court will not overturn the jury's findings on willfulness
and good faith, and plaintiffs are entitled to liquidated
damages as follows:

Aguilar's Liquidated Damages

| Year | Minimum Wage Damages | Liq. Dam. Percentage | Min. Wage Liq. Damages | Overtime Wage Damages | Liq. Dam. Percentage | Overtime Liq. Damages |
|------|------|------|------|------|------|------|
| **2009** | $1280 | 25% | $320 | $5360.63 | 25% | $1340.16 |
| **2010** | $2080 | 25% | $520 | $8482.5 | 25% | $2120.63 |
| **2011[5]** | $561.6 | 25% | $140.4 | $2290.28 | 25% | $572.57 |
| **2011** | $478.4 | 100% | $478.4 | $1951.32 | 100% | $1950.98 |
| **Total** | $4400 | | $1458.8 | $18084.38 | | $5984.33 |

---

[5] 2011 is split into two time periods because the liquidated damages provision
of New York Labor Law § 198 increased from 25% to 100% beginning April 9,
2011. The jury awarded Aguilar damages in 2011 from the start of the year
until his salary increased beginning in July 2011. The court apportioned
Aguilar's 2011 damages award into 54%, reflecting the percentage of time from
January 1, 2011 through April 8, 2011, and 46%, reflecting the percentage of
time from April 9, 2011 through June 30, 2011. The court then awarded
liquidated damages based on the percentage applicable to each time period.

Torres's Liquidated Damages

| Year | Minimum Wage Damages | Liq. Dam. Percentage | Min. Wage Liq. Damages | Overtime Wage Damages | Liq. Dam. Percentage | Overtime Liq. Damages |
|---|---|---|---|---|---|---|
| **2009** | $2455 | 25% | $613.75 | $5360.63 | 25% | $1340.16 |
| **2010** | $2080 | 25% | $520 | $8483 | 25% | $2120.75 |
| **Total** | $4535 | | $1133.75 | $13843.63 | | $3460.91 |

## C. Prejudgment Interest

"Where . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b).  *See also Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994) ("[W]here damages are incurred at various times after the cause of action accrues, [N.Y. C.P.L.R.] section 5001 grants courts wide discretion in determining a reasonable date from which to award pre-judgment interest.").  "[T]he midway point between when 'plaintiffs began and ceased working for defendant[s]' [is] a 'reasonable intermediate date' for purposes of calculating prejudgment interest."  *Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (citing *Pavia v. Around the Clock Grocery, Inc.*, No. 03-CV-6465, 2005 WL 4655383, at *8 (E.D.N.Y. Nov. 15, 2005)).

"Pre-judgment interest and liquidated damages under the Labor Law are not functional equivalents . . . [and] serve fundamentally different purposes." *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999). "Prejudgment interest is calculated [ ] on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 49 (E.D.N.Y. 2015) (citations omitted).

"Simple prejudgment interest is calculated by multiplying the principal by the interest rate by the time period-from a singular, midpoint date-up until and including the date judgment is entered." *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195, 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012). The statutory rate of interest in New York is nine percent per year. N.Y. C.P.L.R. § 5004.

Here, the principal is the amount of compensatory damages, which is multiplied by 9% and by the number of years from the midpoint date through the date judgment is entered. The midpoint date for Aguilar, based on his employment dates, is May 1, 2012. The court exercises its discretion and adopts plaintiffs' proposed midpoint date of December 6, 2009 for Torres. The prejudgment interest for the plaintiffs is as follows:

| Plaintiff | Compensatory Damages | Interest Rate | Years through September 6, 2019 Judgment | Prejudgment Interest Owed |
|-----------|---------------------|---------------|------------------------------------------|---------------------------|
| **Aguilar** | $22484.38 | 9% | 7.35 | $14873.42 |
| **Torres** | $18378.63 | 9% | 9.75 | $16127.25 |

### D. Post-Judgment Increase

Pursuant to N.Y. Lab. Law § 198(4), "if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." Plaintiffs are entitled to an increase consistent with Section 198(4) if the statutory conditions are met.

### E. Attorneys' Fees

The parties are directed to confer and file a proposed briefing schedule regarding plaintiffs' application for attorney's fees.

## CONCLUSION

For the foregoing reasons, the court denies defendants' motions for judgment as a matter of law, or a new trial, and grants plaintiffs' motion for liquidated damages, pre-judgment interest, and attorneys' fees. Specifically, the court orders that plaintiffs are entitled to the following:

- (1) compensatory minimum wage damages of $4,400 to Aguilar and $4,535 to Torres;

- (2) compensatory overtime damages of $18,084.38 to Aguilar and $13,843.63 to Torres;

- (3) liquidated damages of $7,443.13 to Aguilar and $4,594.66 to Torres; and

- (4) prejudgment interest of $14,873.42 to Aguilar and $16,127.15 to Torres.

The parties are directed to meet, confer, and jointly propose a briefing schedule regarding attorneys' fees by October 1, 2019. The Clerk of Court is respectfully directed to enter judgment consistent with this order.

**SO ORDERED.**

Dated:     September 5, 2019
           Brooklyn, New York


                              _____/s/_____
                              **HON. KIYO A. MATSUMOTO**
                              United States District Judge
                              Eastern District of New York